UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JOHNNIE M. ALLEN | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:07-cv-1229 |
| | § | |
| WHOLE FOODS MARKET, INC., | § | |
| WHOLE FOODS MARKET ROCKY | § | |
| MOUNTAIN/SOUTHWEST L.P. | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

Plaintiff Johnnie M. Allen seeks relief against her former employer Defendant Whole Foods Market Rocky Mountain/Southwest L.P ("Whole Foods"). Defendant Whole Foods Market, Inc. has already been dismissed from the case.

Whole Foods has sought summary judgment on all of Plaintiffs' claims. After the motion for summary judgment was briefed, it was the subject of oral argument before the Court. The Court then granted leave for Plaintiff to file a supplemental response to Whole Foods' motion. Plaintiff has now filed its supplemental response, and Whole Foods has also filed an additional brief.

Plaintiff is an African American female who, at the time of the events about which she complains, was over the age of forty. She alleges violation of the Age Discrimination in Employment Act ("ADEA"), racial discrimination prohibited by Title VII of the Civil Rights Act of 1964 ("Title VII"), and retaliation under the ADEA and Title VII. Plaintiff further alleges that she was the subject of employer policies that, although facially neutral, had a disproportionate

impact on African Americans, and that she was also the victim of an environment of harassment and hostility.

For the reasons that follow, the Court finds and holds that Whole Foods should be granted summary judgment on each of Plaintiff's claims. As to her claims of disparate impact and harassment, Plaintiff's claims are barred because not first presented to the Equal Employment Opportunity Commission ("EEOC"). As to her other claims, Plaintiff fails to make a prima facie case.

I.   **FACTUAL BACKGROUND**

Except as noted, the following facts are not disputed. Plaintiff worked for Whole Foods during two different periods. Her first employment was from April 1994 through July 1999, when she was terminated. Plaintiff's claims are limited to the second period, beginning in April 2002 and ending in November 2006. For her second period of employment, Whole Foods says that Plaintiff was hired by Sandra Himes, who is African American and slightly older than Plaintiff, and by Mark Dixon. Plaintiff does not agree that Ms. Himes was involved with the hiring decision.

Whole Foods is an upscale grocer with a number of different stores. Plaintiff's work experience was initially at the store located on Shepherd Drive in Houston, and during her second period of employment at a Kirby Drive location to which the earlier store had been relocated. During this second period of employment Plaintiff was a Cashier/Front End Team Member.

Among Plaintiff's duties were customer service and maintaining an accurate account of the cash in her cash drawer. Whole Foods utilizes a points system to track accuracy among

cashiers, and a cashier who accumulates more than fifty points receives an unsatisfactory work warning.

During Plaintiff's second period of employment she received several written notices documenting what her supervisors believed to be poor customer service, or for violation of Whole Foods' policy as to accounting for money in her cash drawer. On September 16, 2005, Karen Roberts, an Associate Store Team Leader, placed her on "final warning." Whole Foods contends that its policy prevents employees who are on final warning for issues relating to their work performance other than cash handling from transferring into another department for a period of twelve months. Plaintiff contends that there were exceptions to the stated policy. During the twelve month period, however, an employee may interview for a position in another department, so as to let the other department know of her interest in a transfer.

On August 22, 2006, Plaintiff received a second "final warning." During the period when Plaintiff was on final warning, she applied to transfer on three different occasions. She was not allowed to transfer, and apparently was given no reason to believe that, after the twelve month period had concluded, she would be allowed to make any of the requested transfers.

On November 13, 2006, Plaintiff had an encounter with Greg Rockwell, an Associate Team Leader, concerning the envelope containing her paycheck stub, complaining that it was perforated and partially opened. Plaintiff was not satisfied with his response, and took the matter to Tara Hughes, a Guest Services Team Leader. Ms. Hughes and Ms. Rockwell subsequently decided to send Plaintiff home because of her conduct which allegedly included failing to greet customers.

3

On the following day, Ms. Hughes reported the matter to Ms. Himes, and Ms. Himes decided to suspend Plaintiff so than an investigation could be conducted. Ms. Himes subsequently decided to terminate Plaintiff.

On November 16, after Plaintiff had been suspended, she filed a charge of discrimination with the EEOC alleging racial discrimination, age discrimination, and retaliation. The retaliation claim was based on her complaint about the perforated paycheck envelope. Plaintiff later acknowledged that no one at Whole Foods knew about the filing with the EEOC when Plaintiff was terminated on November 20.

## II. STANDARD FOR SUMMARY JUDGMENT

A motion for summary judgment under Federal Rule of Civil Procedure 56 requires the Court to determine whether the moving party is entitled to judgment as a matter of law based on the evidence thus far presented. FED. R. CIV. P. 56(c). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001) (quotations omitted). A genuine issue of material fact exists if a reasonable jury could enter a verdict for the non-moving party. *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000). The Court views all evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Id.* Conclusory allegations, unsubstantiated assertions, and unsupported speculation are not competent summary judgment evidence. *See, e.g., Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1975 (5th Cir. 1994) (noting that a non-movant's burden is "not

satisfied with 'some metaphysical doubt as to the material facts.'" (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

### III. PLAINTIFF'S DISPARATE IMPACT CLAIM

As the Court of Appeals has held:

> Title VII creates a federal cause of action for two largely separate theories of discrimination, disparate treatment and disparate impact. Disparate-treatment discrimination addresses employment actions that treat an employee worse than others based on the employee's race, color, religion, sex, or national origin. . . . Disparate-impact discrimination, on the other hand, addresses employment practices or policies that are facially neutral in their treatment of those protected groups, but, in fact, have a disproportionately adverse effect on such a protected group.

*Pacheco v. Mineta*, 448 F.3d 783, 787 (5th Cir.) (internal citations omitted), *cert. denied*, 127 S.Ct. 299 (2006).

In disparate impact cases, proof of discriminatory motives is not required. *Id.* The defendant can, however, rebut a prima facie showing of disparate impact by proving that the policy in question is a business necessity. *Id.*

With both kinds of claims, and with all other such employment discrimination claims, private sector employees must first file an administrative charge with the EEOC. 42 U.S.C. § 2000e-5(b). The scope of this exhaustion requirement is identical with respect to both federal employees (as in *Pacheco*) and those in the private sector. *Id.* at 788 n.6; *Dollis v. Rubin*, 77 F.3d 777, 781 (5th Cir. 1995).

Because most filings with the EEOC are *pro se*, courts construe liberally the exhaustion requirement. *Sanchez v. Standard Brands, Inc.* 431 F.2d 455, 463 (5th Cir. 1970). Nonetheless, a primary purpose of the nation's anti-discrimination laws is to attempt to achieve non-judicial resolution of employment discrimination claims. *Fellows v. Universal Restaurants, Inc.* 701 F.2d 447, 466. (1983). The Court of Appeals has made clear that, "[a]llowing a federal court

complaint to proceed despite its loose 'fit' with the administrative charge and investigation . . . is precluded if it would circumvent . . . agency efforts to secure voluntary compliance before a civil action is instituted." *Ong v. Cleland*, 642 F.2d 316, 319 (9th Cir. 1981).

In this case, even with the most liberal interpretation of the administrative exhaustion requirement, Plaintiff cannot be said to have met it. In her complaint to the EEOC, Plaintiff claimed to "have been subjected to different terms and conditions of employment in comparison to non Black employees." She went on to complain of "write ups against me that I felt were unfair." She next noted that she had been unsuccessful in her attempts to transfer to another department. Plaintiff then stated that she had seen one of her supervisors touch the breast of another woman and that her supervisor had realized that Plaintiff had witnessed this. Finally, Plaintiff complained about her "check stub not being secured" on a recent date and that the person to whom she had complained had become irate. The Court is unable to construe any of these charges as covering an employment policy that was facially neutral but applied so as to have a disproportionate impact on a protected group. *Pacheco*, 448 F.3d at 787. Not only did Plaintiff's EEOC complaint not include a disparate impact claim, neither did any of her writings or oral arguments in this Court until the briefing required after the hearing on Defendant's Motion for Summary Judgment. On this issue, Whole Foods' motion for summary judgment must be granted.

### IV. PLAINTIFF'S HARASSMENT CLAIM

Plaintiff's harassment claim presents a closer question. In her complaint, Plaintiff does allege that "[s]hortly after Plaintiff saw one of her supervisors touch another co-worker in an inappropriate way, Plaintiff began to experience harassment and retaliatory treatment on the job, and Plaintiff began receiving unwarranted adverse employment actions." Plaintiff's Second

Amended Complaint at para. 15. As already noted, in her EEOC filing, Plaintiff did refer to the incident between her supervisor and another woman.

The reference to that incident, however, appears near the end of Plaintiff's EEOC filing and none of the allegedly discriminatory conduct is said to have been a result of it. Nor does Plaintiff suggest any reason that this incident would have influenced the conduct of the other four people about whom Plaintiff complained to the EEOC.

Plaintiff simply did not provide enough information for the EEOC to have known that it needed to investigate a claim of workplace harassment. *See Reno v. Defendantspolitan Transit Authority*, 977 F. Supp. 812, 818-19 (S.D. Tex. 1997) (plaintiff could not assert a sexual harassment claim when the EEOC charge alleged only sex, age, and race discrimination). Accordingly, Plaintiff's claim for harassment must be dismissed.

## V. PLAINTIFF'S CLAIM FOR AGE AND RACE DISCRIMINATION

The Court notes that Plaintiff's Second Amended Complaint does not make entirely clear the particular acts or omissions which Plaintiff believes to have been tainted by discrimination based on race or age. At the very least, however, Plaintiff does claim that Whole Foods' failure to promote her, and its subsequent decision to terminate her were both the result of race and/or age discrimination.

### A. Plaintiff's Claim for Age Discrimination

Under the Age Discrimination in Employment Act ("ADEA") "[i]t shall be unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's age." 29 U.S.C. § 623(a)(1). "When a plaintiff alleges disparate treatment, liability depends on whether the protected trait (under the ADEA, age) actually motivated the employer's

7

decision." *Reeves v. Sanderson Plumbing Prods., Inc.* 530 U.S. 133, 131 (2000). To show age discrimination a "plaintiff must show that '(1) he was discharged; (2) he was qualified for the position; (3) he was within the protected class at the time of discharge; and (4) he was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of his age.'" *Palasota v. Haggar Clothing Co.*, 342 F.3d 569, 576 (5th Cir. 2003) (quoting *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 957 (5th Cir. 1993).

In this case, Plaintiff fails to plead the constituent elements of age discrimination as to either Whole Foods' failure to transfer her or its decision to terminate her. Neither does Plaintiff come forward with any evidence as to these issues. Plaintiff alleges that she first sought to transfer to the Meat Department. A Hispanic female got the job. Plaintiff comes forward with no evidence that she was qualified for the position, much less that she was more qualified than the person, also a member of a protected class, who got the job. Secondly, Plaintiff complains of not receiving a transfer to the position of Coffee Specialist. Plaintiff provides no evidence to refute Whole Foods' evidence that Plaintiff did not get an interview for the position because Whole Foods lacked Plaintiff's telephone number. Although Plaintiff could have been contacted while at Whole Foods, the employer would have reason not to pursue an applicant who could not even provide correct contact information. Plaintiff likewise offers no evidence that she was qualified for this position other than to contend that she had one year's experience in a specialty department at another grocery story. She admits that the person who did get the job had experience in the Specialty Department at Whole Foods, although not with coffee. Third, Plaintiff complains of her failure to receive a transfer to a position in the Nutrition Department as an overnight stocker. Plaintiff concedes, however, that "the position was not filled up to the time Plaintiff separated" from Whole Foods. (Pl.'s Response to Mot. Summ. J. at 9.)

As to Plaintiff's discharge, again Plaintiff fails to plead or provide any evidence as to the constituent elements of an age discrimination claim. There is absolutely nothing in the record that indicates that her discharge, which was ordered by an African American female older than Plaintiff, had anything to do with age. There is certainly no evidence that Plaintiff was replaced by a person younger or outside the protected class. It also appears that Plaintiff was re-hired by Whole Foods when she was already within, or nearly within, the protected class. This, too, cuts sharply against Plaintiff's very ill-defined claim of age discrimination.

### B. Plaintiff's Race Discrimination Claim

The requirements are well-established for a race discrimination claim based on disparate treatment.. A plaintiff must first establish a prima facie case of discrimination. To do that she must "demonstrate that (1) she is a member of a protected class, (2) she was qualified for her position, (3) she suffered an adverse employment action, and (4) others similarly situated were more favorably treated." *Rutherford v. Harris County*, 197 F.3d 173, 185 (5th Cir. 1999). The burden then shifts to defendant to articulate a legitimate, nondiscriminatory reason for the employment action. *McDonell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Urbano v. Continental Airlines, Inc.*, 138 F.3d 204, 206 (5th Cir.), *cert. denied*, 525 U.S. 1000 (1998).

If defendant meets its burden of production, "the McDonell Douglas framework with its presumptions and burdens" disappears and "the sole remaining issue" is "discrimination vel non." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 130, 142-43 (2000). The "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Reeves*, 430 U.S. at 143.

Plaintiff fails to make a prima facie case of race discrimination. "To establish a claim of disparate treatment, [plaintiff] must show that [defendant] gave preferential treatment to a

[person of a non-protected class] under nearly identical circumstances." *Wyvill v. United Companies Life Ins. Co.*, 212 F.3d 296, 304 (5th Cir. 2000) *cert. denied* 531 U.S. 1145 (2001).

Plaintiff does not even claim to have identified any other person of any description who had previously been terminated, had been re-hired, and had recently received two final warnings. To make the case that she was the victim of racial discrimination, therefore, Plaintiff must show that the write-ups she received were a result of her race. In her deposition, however, Plaintiff herself testified to the contrary.

> Q. Okay, other than the August 22, 2006, can you point to any of the other four write-ups for customer service or team member problems that were – you think were given to you because of your race and not because the events occurred or were perceived?
>
> A. No.

(Defendant's Exhibit E at 203-04.) As to the write-up on August 22, 2006, Plaintiff's argument that it was a result of her race is based on nothing more than her belief. *Id.* An employee's "subjective belief of discrimination, however genuine [may not] be the basis of judicial relief." *Lawrence v. University of Texas Medical Branch at Galveston*, 163 F.3d 309, 313 (5th Cir. 1999).

## VI. PLAINTIFF'S RETALIATION CLAIM

To establish a prima facie case of retaliation, a plaintiff must prove 1) that she engaged in activity protected by Title VII; 2) that she suffered an adverse employment action; and 3) that a causal connection exists between the protected activity and the adverse employment action. *Byers v. The Dallas Morning News, Inc.* 209 F.3d 419, 428 (5th Cir. 2000). *Long v. Eastfield College*, 88 F.3d 300, 304 (5th Cir. 1996).

An individual engages in protected activity if: 1) she opposes an employment practice made unlawful, or 2) she makes a charge, testifies, assists, or participates in a related

investigation, proceeding, or hearing. *Byers*, 209 F.3d at 428; *Long*, 88 F.3d at 304; 42 U.S.C. § 2000e-3(a). The employee must have engaged in statutorily protected activity. *Holt v. JTM Industries, Inc.*, 89 F.3d 1224, 1226-27 (5th Cir. 1996).

Plaintiff admits that no one at Whole Foods knew about her filing with the EEOC on November 16, 2006, at the time she was terminated. That filing cannot, therefore, serve as a basis for any claim of retaliation.

Instead, Plaintiff claims that there was a causal connection between her having sent an email to Valerie Esparza on August 23, 2006, and her termination. Although Plaintiff's email to Ms. Esparza was wide-ranging and discussed her write ups, nowhere is there any mention of race or age discrimination. "Vagueness as to the nature of the grievance . . . prevents a protest from qualifying as a protected activity." *Dupont-Lauren v. Schneider (USA), Inc.*, 994 F.Supp. 802, 823 (S.D. Tex. 1998).

Plaintiff also went a long way toward refuting her own claim. At her deposition, the following exchange took place:

> Q. . . . What facts, other than you feelings, do you have to support that there was any link between the trouble you got into at Whole Foods –
>
> A. None.
>
> Q. Okay, Between you contacting Ms. Esparza and the trouble you get into, and the answer is none?
>
> A. I don't know.

(Defendant's Ex. E at 160.)

The timing of pertinent events is also largely inconsistent with Plaintiff's claim of retaliation. Before she emailed Ms. Esparza, she had already received her write ups and two

11

final warnings. Plaintiff does not suggest that those write ups and warnings had anything to do with retaliation.

### VII. CONCLUSION

Defendant's Motion for Summary Judgment is **GRANTED**. Plaintiff's claims are **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED.**

**SIGNED** this 5th day of September, 2008.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

TO ENSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER SHALL FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT